UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
: 
LUZENILDE CAMPOS,                           : **Index No**. 05 CV 2089 (LTS)
                                            :
                Plaintiff,                  : **ECF Case**
                                            :
        - against -                         :
                                            : **COMPLAINT**
SCARLET CONSTANCE LEMAY,                    :
                                            : **JURY TRIAL**
                Defendant.                  : **DEMANDED**
                                            :
------------------------------------------------------------x

PRELIMINARY STATEMENT

Plaintiff Luzenilde Campos (hereinafter "Campos") brings this action to obtain unpaid minimum wages and overtime premiums, as well as other amounts owed to her by Defendant Scarlet Constance Lemay (hereinafter "Defendant") in accordance with federal and New York State law.

Campos was a domestic worker for Defendant at Defendant's home in New York City. Campos worked seven days a week and slept on the floor in Defendant's son's bedroom. Her duties included caring for Defendant's son, preparing all of Defendant's son's meals, accompanying Defendant's son to and from school, cleaning Defendant's home, shopping for groceries and performing any other tasks requested by Defendant.

The compensation that Campos received in return for her services did not meet the requirements of federal minimum wage law and New York State minimum wage and overtime law. Campos seeks redress for the violations of her rights under federal and state law.

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) and has supplemental jurisdiction over Campos' state claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b), as events giving rise to this action occurred within this district and Defendant resides in this district.

## PARTIES

3. Campos is an adult individual residing in New York, NY. Campos worked for Defendant from December 2000 through October 2003.

4. Defendant is an adult individual residing at 515 East 72nd Street, Apartment 16C, New York, NY 10021.  Defendant runs two businesses, CLG Enterprises and 9 Diamonds Entertainment Affiliates, which are both located at 1275 First Avenue, New York, NY 10021.

5. At all times relevant to this action, Campos was Defendant's employee as defined by 29 U.S.C. § 203(e)(1) and New York Labor Law § 2(5), § 190(2) and §651(5).

6. At all times relevant to this action, Defendant was Campos' employer as defined by 29 U.S.C. § 203(d) and New York Labor Law § 2(6), § 190(3) and §651(6).

7. At all times relevant to this action, Campos was employed by Defendant within the meaning of 29 U.S.C. § 203(g) and New York Labor Law § 2(7).

8. At all times relevant to this action, Campos was employed by Defendant as a manual worker as defined by New York Labor Law §§ 2(7) and 190(4).

## STATEMENT OF FACTS

9. Campos began working for Defendant on December 1, 2000.

10. Campos and Defendant agreed that Campos would perform housekeeping duties, run errands, and look after Defendant's then-two-year-old son, Tristan Lemay (hereinafter "Tristan").

11. When Campos first began working for Defendant, she was hired to work only on the weekends, for $160 for the entire weekend. Campos worked for the Defendant only on the weekends for approximately three weekends.

12. During this time, Campos stayed with Defendant on weekends but not during the week.

13. Her workday on weekend days began at approximately 7:00 AM and lasted until approximately 11:30 PM, or later, depending on the amount of work Defendant gave her on a particular weekend.

14. Around December 25, 2000, Campos moved in with Defendant and began working seven days a week for Defendant. For the few weeks that followed, Campos was paid $80 per day and was not given any days off.

15. Campos slept on the floor in Tristan's bedroom beside his crib. She eventually obtained a mattress to place on the floor from the doorman of Defendant's building.

16. Around January 15, 2001, Campos and Defendant agreed that Campos would get Sundays and Mondays off and would work for Defendant during the remaining five days of the week for $450 per week while continuing to live with Defendant all week.

17. However, Defendant continued to give Campos a full day's work on Sundays and Mondays while still paying her only $450 per week.

18. Around March 15, 2001, Campos and Defendant agreed that Campos would work seven days a week for $600 per week.

19. Campos and Defendant did not discuss the hours that Campos would be required to work.

20. Campos' typical workday at Defendant's house began at 7:00 AM, when she would prepare breakfast for Tristan and begin performing housework. When Tristan began attending school, Campos would assist Tristan in getting ready for class and then escort him to the Montessori School of New York located at 347 East 55th Street, New York, NY 10022, and when he was older, to the Lyceum Kennedy school, located at 225 East 43rd Street, New York, NY 10017.

21. After dropping Tristan off at school, Campos would return to Defendant's apartment to perform housework. Campos' housework included, but was not limited to, sweeping and mopping the floor, dusting the apartment, making the beds, cleaning the bathrooms daily, cleaning the windows once a week and doing the laundry.

22. Campos, as part of her duties, walked Defendant's dog twice a day and ran errands for Defendant throughout the day, such as picking up the Defendant's mail from a post office box.

23. Between 2:00 PM and 2:30 PM on school days, Campos would pick up Tristan from school and either bring him home, take him to the park or bring him along on the errands she performed for Defendant.

24. At about 6:00 PM each day, Campos would make dinner for Tristan and attend to him afterwards. Tristan would go to sleep at approximately 9:30 PM each night. If there was any other housework left to be done on a given day, Campos would finish it after Tristan went to sleep.

25. Defendant also maintained another apartment, the address of which was 230 East 48th Street, Apartment 2D, New York, NY and which Campos believes was used by Defendant in connection with Defendant's businesses. Campos cleaned this second apartment approximately once a week, upon Defendant's instructions.

26. On or about December 31, 2001, Defendant agreed that she would pay Campos $650 per week and that after a few months this amount would be raised to $700 per week.

27. Until December 2001, Defendant had been frequently late with her payments to Campos.

28. Shortly thereafter, Defendant began to fall significantly behind on her payment of Campos' wages.

29. At Defendant's request, Campos began to keep handwritten records of the wages she was owed and the payments that she received.

30. In addition, at the request of Defendant, and with promises of reimbursement from Defendant, Campos began spending her own money in order to complete her errands for Defendant. For instance, Campos would at times use her own money to buy food for the apartment and to pay for transportation while doing errands for Defendant. Often, Campos was not reimbursed as promised by Defendant.

5

31. From time to time, Defendant would also request that Campos lend her money, claiming she was short of cash and promising to repay Campos.

32. Defendant failed to reimburse or repay Campos for expenses and loans in aggregate amount of approximately $1,575.

33. As Defendant continued to fall behind on her payments, Campos frequently raised the matter with Defendant. Defendant repeatedly promised to pay Campos and asked Campos to continue to work.

34. As Campos continued to press the matter of the wages owed to her, Defendant would persuade Campos into continuing to work for Defendant. Defendant would plead with Campos not to leave, claiming that she and Tristan loved Campos and needed her companionship and help around the apartment.

35. In addition to persuading her, Defendant would also try to intimidate and scare Campos by saying that Campos had little chance of finding work elsewhere since her English was so poor. Defendant would tell Campos that if she were to leave her employ, she would not be able to find any place to live. Defendant would also insult and humiliate Campos, for instance, by calling her a "slave". A male companion of Defendant would also come to Defendant's apartment and verbally harass and intimidate Campos.

36. Campos, despite not receiving her promised pay, continued to work for Defendant, because of her attachment to Tristan and her belief that Defendant intended to eventually pay her in full.

37. Eventually, after losing faith that Defendant would pay her, and because of the mistreatment she suffered, Campos began looking for other employment,

but had trouble finding another job due to language difficulties, a lack of contacts in the New York area and the long hours that she worked for Defendant.

38. After looking for alternative employment for many months, Campos eventually found another position as a domestic worker.

39. On or about October 19, 2003 Campos terminated her employment relationship with Defendant.

40. Campos had alerted Defendant to the fact that she was looking for another job one month before leaving, and then gave Defendant a week's notice before actually leaving.

41. When Campos told Defendant she was leaving, Defendant again tried to persuade Campos to stay by saying she would pay her all the money she was owed and by attempting to make Campos feel guilty for leaving Tristan.

42. In total, Campos was paid approximately $70,925.00 by Defendant for the period beginning on or about December 1, 2000 and ending on or about October 19, 2003. This figure is equivalent to approximately $3.39 per hour for approximately 20,925 hours.

43. Defendant willfully and intentionally failed to pay Campos minimum wages and overtime wages for her work, as required by federal and New York State labor law.

44. Defendant failed to pay Campos an extra hour's pay for each day Campos worked more than ten hours, as required by the New York Labor Law.

45. Defendant violated the express agreements she made with Campos to pay Campos specified amounts of money for her work.

46.     Defendant failed to repay Campos money that she borrowed from Campos and failed to reimburse Campos for money Campos spent to complete Defendant's errands.

FIRST CLAIM FOR RELIEF
FEDERAL MINIMUM WAGE

47.     Campos realleges and incorporates by reference paragraphs 1 through 46 above.

48.     Defendant failed to pay Campos the minimum wage of $5.15 per hour in violation of 29 U.S.C. § 201, et seq. and the U.S. Department of Labor regulations.

49.     Defendants' failure to pay Campos the minimum wage was willful within the meaning of 20 U.S.C. § 255(a).

50.     Campos is entitled to an award of damages for unpaid minimum wages in an amount to be determined at trial.

SECOND CLAIM FOR RELIEF
FEDERAL LIQUIDATED DAMAGES

51.     Campos realleges and incorporates by reference paragraphs 1 through 50 above.

52.     Defendant failed to pay Campos the minimum wage of $5.15 per hour in violation of 29 U.S.C. § 201, et seq. and the U.S. Department of Labor regulations.

53.     Defendants' failure to pay Campos the minimum wage was willful within the meaning of 20 U.S.C. § 255(a).

54.     Campos is entitled to an award of liquidated damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### NEW YORK STATE MINIMUM WAGE AND OVERTIME

55.Campos realleges and incorporates by reference paragraphs 1 through 54 above.

56.Defendant failed to pay Campos the minimum wage of $5.15 per hour in violation of New York Labor Law § 652 and supporting regulations of the New York State Department of Labor.

57.Defendant failed to pay Campos overtime wages at the rate of one and one-half times her regular rate for each hour worked in excess of 44 hours per week in violation of New York Labor Law §§ 190 et seq. and 650 et seq. and supporting regulations of the New York State Department of Labor.

58.Defendant's failure to pay the minimum wage and overtime wages was willful within the meaning of New York Labor Law § 663.

59.Campos is entitled to an award of damages for unpaid minimum wages and for unpaid overtime wages for each hour worked over 44 hours per week, in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### NEW YORK STATE SPREAD OF HOURS

60.Campos realleges and incorporates by reference paragraphs 1 through 59 above.

61.Defendant failed to pay Campos an extra hour's pay for every day that Campos worked in excess of 10 hours, in violation of New York Labor Law §§ 190, et seq. and 650, et seq. and New York State Department of Labor regulations, 12 N.Y.C.R.R. §§137-1.6, 142-2.4.

62. Defendants' failure to pay an additional hour's pay for each day Campos worked in excess of 10 hours was willful within the meaning of New York Labor Law §663.

63. Campos is entitled to an award of an extra hour's pay for every day that she worked in excess of 10 hours in an amount to be determined at trial.

FIFTH CLAIM FOR RELIEF
NEW YORK STATE LIQUIDATED DAMAGES

64. Campos realleges and incorporates by reference paragraphs 1 through 63 above.

65. Defendant failed to pay Campos the minimum wages required by law and overtime wages for each hour worked in excess of 44 hours per week violates New York Labor Law §§ 190, et seq. and 650, et seq. and New York State Department of Labor regulations. Defendant failed to pay Campos an extra hour's pay for every day that Campos worked in excess of 10 hours violates New York Labor Law §§ 190, et seq. and 650, et seq. and New York State Department of Labor regulations, 12 N.Y.C.R.R. §§ 137-1.6, 142-2.4.

66. Defendant's failure to pay the minimum wage, overtime wages and an additional hour's pay for each day Campos worked in excess of 10 hours was willful within the meaning of New York Labor Law § 663.

67. Campos is entitled to an award of liquidated damages in an amount to be determined at trial.

SIXTH CLAIM FOR RELIEF
TIMELY PAYMENT

68. Campos alleges and incorporates by reference paragraphs 1 through 67 above.

10

69. Defendant's failure to pay wages in a timely manner and no more than seven calendar days after the week in which the wages were earned violates New York Labor Law § 190 et seq.

70. Campos is entitled to damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
## BREACH OF EXPRESS CONTRACT

71. Campos alleges and incorporates by reference paragraphs 1 through 70 above.

72. Defendant's failure to pay Campos agreed upon wages constitutes a breach of the oral contract between Campos and Defendant. Defendant also violated agreements to repay Campos for amounts lent to Defendant by Campos and for expenditures made by Campos on behalf Defendant.

73. Pursuant to New York State common law, Campos is entitled to damages in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
## QUANTUM MERUIT

74. Campos realleges and incorporates by reference paragraphs 1 through 73 above.

75. Defendant has been unjustly and inequitably enriched by failing to pay Campos for Campos's substantial performance of services under the valid express contract between Campos and Defendant, by failing to repay money borrowed from Campos and by failing to repay Campos for amounts spent by Campos on behalf of Defendant.

76. Pursuant to the doctrine of quantum meruit under New York State common law, Campos is entitled to damages in an amount to be determined at trial.

### NINTH CLAIM FOR RELIEF
### MONEY HAD AND RECEIVED

77. Campos realleges and incorporates by reference paragraphs 1 through 76 above.

78. Defendant failed to repay Campos amounts lent to Defendant by Campos and failed to reimburse Campos for expenditures made by Campos on behalf of Defendant.

79. Defendant enriched herself at Campos's expense, by withholding such repayment and reimbursement to which Campos was entitled.

80. The circumstances are such that equity and good conscience require Defendant to pay Campos for all amounts loaned to or spent on behalf of Defendant.

81. Pursuant to the doctrine of money had and received under New York State common law, Campos is entitled to damages in an amount to be determined at trial.

### TENTH CLAIM FOR RELIEF
### PROMISSORY ESTOPPEL

82. Campos realleges and incorporates by reference paragraphs 1 through 81 above.

83. Campos, in reasonable reliance upon clear and unambiguous promises of repayment by Defendant, made certain expenditures on behalf of Defendant and loaned money to Defendant. Because Defendant did not repay Campos for these

expenditures or loans, Defendant has harmed Campos and is therefore liable to Campos for repayment of the amounts spent by Campos on Defendant's behalf and of amounts loaned to Defendant.

84. Pursuant to the doctrine of promissory estoppel under New York State common law, Campos is entitled to damages in an amount to be determined at trial.

WHEREFORE, Campos respectfully requests that the Court award:

(a) unpaid wages, including minimum wages, overtime premiums, spread of hours pay, and liquidated damages pursuant to federal and New York State law for Campos against Defendant;

(b) damages for failure to make timely payments pursuant to New York State law for Campos against Defendant;

(c) damages for breach of contract pursuant to New York State common law for Campos against Defendant;

(d) equitable relief pursuant to the doctrine of quantum meruit under New York State common law for Campos against Defendant;

(e) attorney's fees and costs for Campos against Defendant;

(f) prejudgment interest for Campos against Defendant; and

(g) such other further relief as the Court may deem just and proper.

Dated: _____
New York, NY

Respectfully Submitted,

Simpson Thacher & Bartlett LLP

_____
William T. Russell Jr.
425 Lexington Avenue
New York, New York  10017
(212) 455-2000

Urban Justice Center
Tony Lu
666 Broadway
10th Floor
New York, New York  10012
(646) 459-3005