UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUZENILDE CAMPOS,

            Plaintiff,

-v-

SCARLET C. LEMAY,

            Defendant.

No. 05 Civ. 2089 (LTS)(FM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAY 0 7 2007

## OPINION AND ORDER

APPEARANCES:

SIMPSON THACHER & BARTLETT LLP
  By: William T. Russell, Jr.
      Jason Stone
      William Martin
425 Lexington Avenue
New York, NY 10017

URBAN JUSTICE CENTER
  By: Haeyoung Yoon
123 William Street, 16th Floor
New York, NY 10038

*Attorneys for Plaintiff*

SCARLET C. LEMAY
244 Fifth Avenue, Apt. S-293
New York, NY 10001

*Defendant Pro Se*

LAURA TAYLOR SWAIN, United States District Judge

In this action relating principally to claimed rights to unpaid minimum wages and overtime pay, Plaintiff alleges in her complaint that Defendant has committed violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., violations of New York Labor Law §§ 190 et seq., 650 et seq., 652, and 653, and also asserts causes of action pursuant to 12 N.Y.C.R.R. §§ 137-1.6, 142-2.2, and 142-2.4 for spread-of-hours pay, and claims for breach of contract, quantum meruit, money had and received, and promissory estoppel. Defendant asserts counterclaims against Plaintiff for defamation, intentional infliction of emotional distress, and fraud. The Court has jurisdiction of the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of the remaining claims and counterclaims pursuant to 28 U.S.C. § 1367.

Three motions are before the Court. Plaintiff moves for partial summary judgment, pursuant to Fed. R. Civ. P. 56(c) and S.D.N.Y. Local Civil Rule 56.1, seeking: (a) a declaration that Plaintiff is a covered employee under the FLSA for purposes of minimum wages and the NYLL for purposes of minimum wages, overtime pay, and spread of hours pay; (b) dismissal of Defendant's counterclaims for intentional infliction of emotional distress, defamation, and fraud[1] in their entirety; and (c) a declaration that Defendant's violation of the FLSA was "willful" within the meaning of the FLSA provision that defines a that the three-year statute of limitations for willful violations of the FLSA. Plaintiff further moves *in limine* to preclude Defendant from submitting and eliciting any evidence at trial concerning Plaintiff's immigration status. Finally, Defendant moves *in limine* to preclude Plaintiff from submitting or

---

[1]     In response to Plaintiff's motion for partial summary judgment, Defendant seeks to voluntarily dismiss the fraud counterclaim. That application is granted. (See Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Partial Summ. J. 3 n*.)

eliciting any evidence at trial concerning Defendant's status as a "dominatrix" and/or alleged "escort." The Court has considered carefully all of the parties' submissions in connection with these motions.

For the following reasons, Plaintiff's motion for partial summary judgment is granted with respect to coverage under the FLSA and NYLL and the dismissal of Defendant's counterclaims, and is denied with respect to the three-year statute of limitations for "willful" violations of the FLSA. Plaintiff's motion *in limine* is denied. Defendant's motion *in limine* is granted.

## BACKGROUND

The following material facts are undisputed except as otherwise indicated. Defendant Scarlet C. LeMay ("Defendant" or "Ms. LeMay") employed Luzenilde Campos ("Plaintiff" or "Ms. Campos") as a full-time live-in domestic worker and care-giver for Defendant's son, T.L. ("T.L."), in December 2000.[2] (Pl.'s Local Rule 56.1 Stmt. ("Pl. 56.1 Stmt.") ¶¶ 2-5; Pl.'s Aff. ¶ 2; Def.'s Aff. ¶ 2.) Plaintiff was responsible for caring for T.L. and performing household work for Defendant. (Pl. 56.1 Stmt. ¶ 6.) Defendant has worked as a dominatrix for many years and is identified as the contact for "Ultimate Encounters," a business that has a line listing in the Yellow Pages under "Escorts" or "Escort Services." (Pl. 56.1 Stmt. ¶ 23; Def.'s Aff. 7 n*.)

---

[2]     Ms. LeMay initially hired Ms. Campos as a weekend care-giver for T.L.  Ms. Campos eventually became a full-time domestic worker in the household, replacing Ms. LeMay's former full-time nanny. (Pl. 56.1 Stmt. ¶¶ 2-3; Def. 56.1 Stmt. ¶¶ 2-5.)

The nature and scope of Plaintiff's responsibilities as a domestic worker are in dispute. Plaintiff claims that she was responsible for walking Defendant's dog, buying groceries, and running errands, in addition to her child care and household duties. (Id. ¶ 8; Def.'s Local Rule 56.1 Stmt. ("Def. 56.1 Stmt.") ¶ 8.) Defendant contends that Plaintiff's household responsibilities were "quite minimal" and "consisted principally of cleaning [Plaintiff's] room and [Plaintiff's] bathroom, both of which she shared with T.L." (Def.'s Aff. ¶ 62.) Defendant claims that, contrary to Plaintiff's allegations, Plaintiff "did not engage in any activity that might reasonably be defined as 'work' for any more than four (4) to five (5) hours per day . . ." (Id. ¶ 60.) Defendant also disputes Plaintiff's claim that she worked many Sundays despite the parties' oral agreement that Ms. Campos would have Sundays off. (Pl. 56.1 Stmt. ¶ 10; Def. 56.1 Stmt. ¶ 10.)

Defendant did not keep written records of, or provide Plaintiff with a written agreement memorializing, the date of Ms. Campos's hire, her hours and days of work, her specific duties, or her pay. (Pl. 56.1 Stmt. ¶ 12.) Plaintiff's pay was based upon an oral agreement between the parties, rather than an hourly wage calculation. (Id. ¶ 14.) The parties disagree as to who determined Plaintiff's wages. While Plaintiff claims that Defendant was the sole decision maker in determining Ms. Campos's wages, Defendant contends that she paid Plaintiff according to Plaintiff's wage requests. (Pl. 56.1 Stmt. ¶ 15; Def. 56.1 Stmt. ¶ 15.) Ms. LeMay further disputes Plaintiff's claim that Defendant, as Plaintiff's sole supervisor, observed and directed Plaintiff's activities. (Pl. 56.1 Stmt. ¶ 17; Def. 56.1 Stmt. ¶ 17.) Plaintiff terminated her employment with Defendant in the fall of 2003. (Pl. 56.1 Stmt. ¶ 22.)

The amount of back wages, if any, due to Ms. Campos is in dispute. While Plaintiff

claims that Defendant fell behind in her payment of wages to Ms. Campos and occasionally

borrowed money from Plaintiff, Defendant contends that Plaintiff has received any and all

payments owed to her by Defendant. (Pl. 56.1 Stmt. ¶¶ 19-20; Def. 56.1 Stmt. ¶¶ 19-21.)

After this action was filed, certain newspapers reported upon it. The reportage

included assertions that Defendant is a dominatrix and is affiliated with one or more escort

services. These statements are the principal basis of Defendant's defamation and intentional

infliction of emotional distress claims. Plaintiff's lawyers deny having made such statements to

the press, and Plaintiff denies having spoken to the press after the Complaint was filed.

## DISCUSSION

Summary judgment shall be granted in favor of a moving party where the

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts will be

viewed in the light most favorable to the party opposing the motion, and all reasonable inferences

shall be drawn on the nonmovant's behalf. Consarc Corp. v. Marine Midland Bank, N.A., 996

F.2d 568, 572 (2d Cir. 1993). In the summary judgment context, a fact is material "if it 'might

affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if

'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001), quoting Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). The Second Circuit has explained that the "party against whom

summary judgment is sought . . . 'must do more than simply show that there is some

metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration and emphasis in original)). "[M]ere conclusory allegations, speculation or conjecture" will not provide a sufficient basis for a non-moving party to resist summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

Plaintiff's Status Under FLSA

Plaintiff moves for partial summary judgment declaring that she is a covered employee under the FLSA. The FLSA establishes minimum wage requirements for employers to pay employees and provides a private cause of action for violations of its minimum wage and overtime provisions. See 29 U.S.C. § 201, et seq. To qualify for minimum wages under the FLSA, Plaintiff must establish that she is an employee employed by an employer as defined by 29 U.S.C. § 203. The Second Circuit applies an "economic reality test" for determining whether an employer/employee relationship exists for FLSA purposes. Herman v. RSR Sec. Serv., 172 F.3d 132, 139 (2d Cir. 1999). The proper inquiry is "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." Id. The relevant factors under the economic reality test are "whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984), quoting Bonnette v. California Health and Welfare Agency, 704 F.2d

1465, 1470 (9th Cir. 1983). No one of these individual factors is dispositive. Herman, 172 F.3d at 139.

Defendant concedes that she hired Ms. Campos as a full-time, live-in domestic worker. (Def. 56.1 Stmt. ¶¶ 2-5; LeMay Dep. 65:15-17, Mar. 6, 2006.) While the parties dispute the level of supervision imposed by Defendant (Pl. 56.1 Stmt. ¶ 17; Def. 56.1 Stmt. ¶ 17), Defendant acknowledges that Ms. Campos "worked for Defendant" and cared for Defendant's son. (Def. 56.1 Stmt. ¶ 17.). Additionally, Ms. LeMay paid Plaintiff her wages. (LeMay Dep. 54:17-20; 71:2-11, Mar. 6, 2006.) Defendant's failure to keep employment records does not defeat Plaintiff's claim of employee status. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (reasoning that the result of employer's failure to keep adequate records should not be to penalize employee, and holding that employee has met burden if "he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (superseded by statute on other grounds); Herman, 172 F.3d at 140 (although no evidence existed that purported employer was involved in maintaining employment records, the court reasoned that this factor was not dispositive in determining whether employer/employee relationship existed).

In light of the economic reality of the relationship between Plaintiff and Defendant and the expansive interpretation of FLSA provisions, the undisputed factual record demonstrates amply that Ms. LeMay "possessed the power to control" Plaintiff. She hired Ms. Campos as her employee (LeMay Dep. 50:19-21, Mar. 6, 2006) and compensated her for her responsibilities as a domestic service worker. Herman, 172 F.3d at 129. (LeMay Dep. 54:17-20; 71:2-11, Mar. 6, 2006.) The undisputed facts, even viewed in the light most favorable to

Defendant, the non-moving party, compel the conclusion that Plaintiff was an employee under
the FLSA. Plaintiff is therefore entitled, as a matter of law, to summary judgment in her favor on
the issue of her status as a covered employee for purposes of the minimum wage provisions of
the FLSA.

## Statute of Limitations

Plaintiff further argues that she is entitled to summary judgment
declaring that Defendant's alleged violation of the FLSA was willful, thus rendering the three-
year statute of limitations set forth in 29 U.S.C. § 255(a) applicable to Ms. Campos's claim for
minimum wages. Plaintiff's application for a determination that the three-year statute of
limitations for willful violations of the FLSA applies to her FLSA claim is denied as premature,
in that Plaintiff has not yet proven her allegations that Defendant violated the FLSA.
Accordingly, Plaintiff's motion for partial summary judgment is denied as to the statute of
limitations issue.

## Plaintiff's Status Under NYLL

Plaintiff also seeks partial summary judgment declaring that she is a covered
employee under the minimum wage, overtime, and spread of hour provisions of the New York
Labor Law ("NYLL"). The NYLL defines "employer" and "employee" in the same broad
manner as the FLSA. Lopez v. Silverman, 14 F. Supp. 2d 405, 411 n. 4 (S.D.N.Y. 1998);
Ansoumana v. Gristedes Operating Corp., 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003). To
determine whether an employer/employee relationship exists under the FLSA *and* the NYLL,

8

other courts in this district have turned to the Second Circuit's economic reality test. Gilliam v. Addicts Rehabilitation Center Fund, No. 05 Civ. 3452 (RJH)(RLE), 2006 WL 1049352, at *2 (S.D.N.Y. April 19, 2006); Ansoumana, 255 F. Supp. 2d at 189-190.  Since the Court has concluded that Plaintiff is a covered employee under the FLSA, it follows that Plaintiff is also entitled to partial summary judgment declaring that she is a covered employee under the NYLL.

Defendant's Counterclaims

Plaintiff moves for summary judgment dismissing Defendant's counterclaims for defamation and intentional infliction of emotional distress.

Defamation

To establish a cause of action for defamation under New York law,[3] a private figure plaintiff[4] must plead the following elements: (1) a false and defamatory statement of and concerning the plaintiff; (2) publication by defendant of such a statement to a third party; (3) fault on part of the defendant; and (4) injury to [the] plaintiff."  Berwick v. New World Network

---

[3]    The parties agree that New York law governs Defendant's counterclaims.

[4]    Plaintiff argues that Defendant is a public figure (Pl.'s Mem. of Law 19) and that Defendant must thus show that Plaintiff's statements were made with actual malice.  New York Times v. Sullivan, 376 U.S. 254, 280 (1964) (describing heightened standard for public figures); Rinaldi v. Holt, Rinehart & Winston, Inc., 42 N.Y.2d 369, 379 (1977) (same).  Ms. LeMay disputes Plaintiff's argument and claims that she is not a public figure. (Def.'s Mem. of Law 12 n.*)  Viewing the facts in the light most favorable to the non-moving party (Defendant on the counterclaims), the Court will analyze the defamation counterclaim under the lower threshold for private figures, which requires that Defendant show gross negligence, rather than actual malice.

Intern. Ltd., No. 06 Civ. 2641 (JGK), 2007 WL 949767, at *13 (S.D.N.Y. Mar. 28, 2007);

Church of Scientology Intern v. Behar, 238 F.3d 168, 173 (2d Cir. 2001).  To survive Plaintiff's

motion for summary judgment regarding Defendant's counterclaim for defamation, Defendant

must raise a genuine issue of fact as to each element of the counterclaim.  Fed. R. Civ. P. 56(c).

Ms. LeMay claims that Plaintiff defamed her by conveying that Ms. LeMay was

an "escort" both in the Complaint and in three newspaper articles.  (Def.'s Answer ¶¶ 90-96;

Pl.'s Exs. A, B, C.)

To the extent that Defendant claims that Plaintiff made defamatory statements in

the pleadings or other submissions in the legal proceeding at hand, Plaintiff's allegedly

defamatory statements are absolutely privileged.  Grasso v. Mathew, 564 N.Y.S.2d 576, 578

(App. Div. 1991) ("In the context of a legal proceeding, statements by parties and their attorneys

are absolutely privileged if, by any view or under any circumstances, they are pertinent to the

litigation"); Martirano v. Frost, 25 N.Y.2d 505, 508 (1969) (quoting Andrews v. Gardiner, 224

N.Y. 440, 445 (1918) ("[T]he privilege embraces anything that may possibly be pertinent")).

Defendant's alleged profession is at least tangentially related to Plaintiff's FLSA and NYLL

claims regarding both Plaintiff's claim that she cleaned Defendant's office and Defendant's

alleged lack of funds due to her downturn in business.  (Compl. ¶ 25; LeMay Dep. 46:16-49:4,

Mar. 6, 2006.)

Turning to the statements in the newspaper articles, Defendant has failed to offer

any evidence that Plaintiff provided information to the press implying that Defendant was an

"escort."  Furthermore, Ms. Campos specifically denies speaking to any reporters after the

Complaint was filed.  (Pl.'s Aff. ¶¶ 15-16.)  Her attorneys likewise deny having made any of the

challenged statements to the press. (Pl.'s Mem. in Supp. of Part. Summ. J. 18).

        Any unresolved factual issues as to whether Plaintiff informed the press that Defendant was an "escort" are not material and would not preclude summary judgment dismissing the defamation counterclaim in any event, because Defendant has not raised a genuine issue of fact as to the statements' falsity, and "[t]ruth is a complete defense to . . . libel." Love v. William Morrow & Co., 597 N.Y.S.2d 424, 426 (App. Div. 1993). The first article, Carl Campanile and Jen Kelly, Escort Lady's 'Slave' - Immigrant Nanny Sues, NEW YORK POST, Feb. 16, 2005, at 5, (Pl.'s Ex. A) does not describe Ms. LeMay as an "escort" or "prostitute." The article states that Ms. LeMay is "linked to an upscale escort service" and is "listed in the Greater New York Chamber of Commerce directory as the contact person for 'Ultimate Encounters,' described as an 'Escort Service & Dating Service.'" Defendant, although disclaiming responsibility for the listing, acknowledges that "'Ultimate Encounters' had a line listing in the Yellow Pages under 'Escorts' or 'Escort Services.'" (Def.'s Aff. 7 n*.) The next article, Carl Campanile and Jen Kelly, 'I'm No Slaver,' NEW YORK POST, Feb. 17, 2005, at 26 (Pl.'s Ex. B), describes Ms. LeMay as a dominatrix, which Defendant acknowledges is the proper label for her occupation. (Def.s' Mem. of Law ¶¶ 29-34; LeMay Dep. 34:4-40:23, Mar. 6, 2006.) The article further states that Ms. LeMay "runs an S&M escort service" and established a business called "'Ultimate Encounters' - listed by the Greater New York Chamber of Commerce as an 'escort service and dating service.'" Defendant acknowledges the truth of these statements in her affidavit. (Def.'s Aff. 7, n*.) The final article, Jonathan Lemire, Dominatrix Sez Ex-Nanny Wants Her on the Rack, THE DAILY NEWS, Feb. 17, 2005, at 4 (Pl.'s Ex. D), again states only that Ms. LeMay is a dominatrix; Defendant admits to the truth of this description. (Def.'s

Mem. of Law ¶¶ 29-34; LeMay Dep. 34:4-40:23, Mar. 6, 2006.)

Because Defendant has failed to raise a genuine issue of fact as to the falsity of the statements, the Court need not reach the defamation and gross negligence elements of the claim. Accordingly, Plaintiff is entitled as a matter of law to summary judgment dismissing Defendant's First Counterclaim for defamation.

Intentional Infliction of Emotional Distress

To establish a cause of action for intentional infliction of emotional distress under New York law, a plaintiff must show four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." Howell v. New York Post Co. Inc., 81 N.Y.2d 115, 121 (1993). The requisite showing for emotional distress is stringent: "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d (2007). See Fischer v. Maloney, 43 N.Y.2d 553, 557 (1978) (Court of Appeals adopting Restatement standard); Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996).

In her Second Counterclaim, Defendant asserts that Plaintiff intentionally inflicted emotional distress on Ms. LeMay and her son, T.L., by making "many false and outrageous claims in her Complaint," by telling reporters that Defendant was an "escort," and by leaving T.L. on little notice and telling him that she was going to take him back to Brazil with her.

(Def.'s Answer ¶¶ 98-101.)

Even taking Defendant's allegations as true and drawing all reasonable inferences in Defendant's favor, none of Plaintiff's alleged actions can reasonably be regarded as so "outrageous" or "atrocious" as "to go beyond all possible bounds of decency." Restatement (Second) of Torts § 46 cmt. d (2007). First, commencement of litigation and the allegations in the Complaint cannot constitute "outrageous conduct," as Plaintiff is entitled to vindicate her legal rights. See Maloney, 43 N.Y.2d at 557 (finding that even if defamation action filed "deliberately to malign, harass and intimidate plaintiff," the action did not constitute "outrageous conduct" under the Restatement standard); Walentas v. Johnes, 683 N.Y.S.2d 56, 58 (App. Div. 1999) ("Commencement of litigation, even if alleged to be for the purpose of harassment and intimidation, is insufficient to support such a claim"). Second, Defendant has proffered no proof that Plaintiff or her agents made the statements reported in the newspaper articles and the statements in the articles regarding Ms. LeMay's profession are, as explained above, are true, and thus cannot constitute "outrageous conduct" under the Restatement standard. Defendant fails to proffer any evidence of Plaintiff's alleged statement that she would take T.L. to Brazil. Even as articulated in Defendant's Answer, however, this statement provides no reasonable basis upon which a claim of extreme and outrageous conduct could be sustained.

Turning to the last element of the tort, Defendant has failed to raise a genuine issue of fact as to whether Defendant or her son suffered emotional distress as a result of Plaintiff's allegedly tortious conduct. As counterclaimant, Defendant "is required to establish that severe emotional distress was suffered, which must be supported by medical evidence, not the mere recitation of speculative claims." Walentas v. Johnes, 683 N.Y.S.2d 56, 58 (1999),

quoted in Norman v. Trans World Airlines, Inc., No. 98 Civ. 7419 (BSJ), 2000 WL 1480367, at

*5 (S.D.N.Y. Oct. 6, 2000).  Although Ms. LeMay claims that she did not see a psychologist after

Ms. Campos terminated her employment with the Defendant because she cannot afford it

(LeMay Dep. 140:22-141:8, Mar. 6, 2006), Defendant has failed to supply medical records of any

kind showing that she suffered severe emotional distress.  Further, while Ms. LeMay alleges that

her son, T.L., began having problems in school after the articles came out and visited a

psychologist approximately four times, Defendant has not proffered any medical records or

testimony regarding T.L.'s condition.  Even when viewed in a light most favorable to Ms.

LeMay, Defendant's speculative and conclusory claims fall far short of demonstrating severe

emotional distress.

Since Defendant has failed to proffer evidence raising genuine issues of fact as to

the elements of her cause of action for intentional infliction of emotional distress, Plaintiff's

motion for summary judgment dismissing Defendant's Second Counterclaim is granted.[5]

## Plaintiff's *Motion In Limine*

Plaintiff moves *in limine* to preclude Defendant from submitting and eliciting any

evidence at trial concerning Plaintiff's immigration status.  Plaintiff first argues that her

---

[5]     The Court notes that, in her opposition papers, Defendant argues that she was
somehow unable to take discovery during the period allotted by the Court and that
discovery should now be reopened or that her failure to provide evidence backing
up her counterclaims should be excused.  Defendant has failed to make the
showing required by Federal Rule of Civil Procedure 56(f) or otherwise
demonstrate good cause for relief from the ordinary operation of Rule 56.  Her
request for further discovery is denied, as is her request for permission to make
unspecified amendments to her counterclaims.

immigration status is irrelevant (and therefore inadmissible under Fed. R. Evid. 402) to

Plaintiff's claims for unpaid wages and Defendant's counterclaims for defamation and intentional

infliction of emotional distress.  (Pl.'s Mem. of Law in Supp. of Pl.'s Mot. *In Limine* 1.)

Alternatively, Plaintiff contends that the probative value of evidence regarding Ms. Campos's

immigration status is substantially outweighed by the risks of unfair prejudice to Plaintiff,

misleading the jury, and confusion of the issues.  Fed. R. Evid. 403.  Defendant argues that

Plaintiff's status is relevant to Plaintiff's claims, asserting that she paid Plaintiff in cash because

of Plaintiff's immigration status, and that the method of pay explains to at least some degree the

absence of written records, an issue that may affect the jury's assessment of the credibility of

Plaintiff's underpayment claims, as well as its assessment of any issue regarding the willfulness

of any violations that may be found.  (Def.'s Mem. in Opp'n of Pl's Mot. *In Limine* 1.)

Defendant also argues that Plaintiff's immigration status is relevant to Ms. Campos' employment

as a live-in worker.

       Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to

make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence."  All relevant evidence is

admissible, and irrelevant evidence is not admissible.  Fed. R. Evid. 402.  Federal Rule of

Evidence 401 requires that, "(1) the evidence must be probative of the proposition it is offered to

prove, and (2) the proposition to be proved must be one that is of consequence to the

determination of the action."  United States v. Diaz, 878 F.2d 608, 614 (2d Cir. 1989), quoting

United States v. Hall, 653 F.2d 1002, 1005 (5th Cir. 1981), quoting United States v. Figueroa,

618 F.2d 934, 942 (2d Cir. 1980).

Even relevant "evidence [, however,] may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The Court must balance the relevance of Plaintiff's immigration status to the anticipated defenses to her FLSA and NYLL claims against the possible danger of unfair prejudice and confusion of the issues. Fed. R. Evid. 403. This Court has recognized the potential risk of injury to plaintiffs from disclosing immigration status and holds it undiscoverable when irrelevant to the FLSA claim at issue. Liu v. Donna Karan Intern., Inc., 207 F. Supp. 2d 191, 192-193 (S.D.N.Y. 2002); see also Flores v. Amigon, 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002) (same). Courts have further recognized the *in terrorem* effect of inquiring into a party's immigration status by acknowledging the danger of intimidation that could prevent plaintiffs from vindicating their legal rights. Topo v. Dhir, 210 F.R.D. 76, 78 (S.D.N.Y. 2002). Additionally, where a party's immigration status "only goes to a collateral issue," and not to a material aspect of the case, the probative value of the evidence is outweighed by the potential risks of confusion of the issues, misleading the jury, or waste of time. Id.; Fed. R. Evid. 403.

While the possible *in terrorem* effect of disclosing a party's immigration status raises a legitimate concern, in assessing the risk of prejudice against Plaintiff, "the trial court should carefully consider the likely effectiveness of a cautionary instruction that tries to limit the jury's consideration of the evidence to the purpose for which it is admissible." Figueroa, 618 F.2d at 943.

Here, for substantially the reasons articulated by the Defendant, the Court finds

that Plaintiff's immigration status is relevant to her wage and overtime claims. Plaintiff's motion

to preclude the introduction of such evidence is therefore denied. The Court will, however, on

request, give a limiting instruction to the effect that, while the jury may consider the evidence of

Ms. Campos' immigration status in connection with its assessment of the credibility of the

parties' claims concerning Ms. Campos' compensation and the nature of her duties, the jury must

not, in any way, permit any views or feelings that they may have concerning immigrants or

immigration policy to enter into their decision-making process or deliberations in any way.

### Defendant's *Motion In Limine*

Defendant moves *in limine* to preclude Plaintiff from submitting or eliciting any

evidence concerning Defendant's status as a "dominatrix" and/or alleged "escort" at trial, arguing

that her profession is irrelevant to Plaintiff's claims and that the introduction of information

regarding her line of work has the potential to "shock . . . or otherwise distract the jury" (Def.'s

Mem. in Supp. of Def.'s Mot. *In Limine* 1.) The parties agree that the only issues to which Ms.

LeMay's work endeavors might be relevant are those raised in her counterclaims. In light of the

dismissal of those counterclaims, the Defendant's motion *in limine* is granted.

.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is

granted with respect to coverage under the FLSA and the NYLL. It is also granted to the extent

it seeks dismissal of Defendant's First and Second Counterclaims. It is denied to the extent it

seeks a determination that the three-year statute of limitations for "willful" violations of the

FLSA applies. Defendant's application to voluntarily dismiss her Third Counterclaim, alleging fraud, is granted.

Plaintiff's motion *in limine* is denied, and Defendant's motion *in limine* is granted.

A final pre-trial conference in this matter is scheduled for June 5, 2007, at 11:00 a.m. The parties are directed to comply with the Court's August 22, 2005, Pre-trial Scheduling Order *and* to meet with Judge Maas for settlement purposes prior to the conference.

SO ORDERED.

Dated: New York, New York
       May 7, 2007

LAURA TAYLOR SWAIN
United States District Judge

18